IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

MICHAEL D. VAN DEELEN,

         Plaintiff,

    Vs.                            No.  05-4039-SAC

MARION JOHNSON,
STEVEN MILES,
DALE FLORY,
KENNETH FANGOHR,
KEN McGOVERN, and
THE BOARD OF COUNTY COMMISSIONERS
    OF DOUGLAS, KANSAS,

         Defendants.

MEMORANDUM AND ORDER

This civil rights case comes before the court on cross motions for summary judgment.   Plaintiff, a pro se frequent filer, alleges that his constitutional and other rights were violated during and immediately following his tax appeal hearing.   Based upon this one incident, plaintiff advances 18 separate federal and state law theories against the following: The Board of County Commissioners of Douglas County; Marion Johnson, the Douglas County Appraiser; Ken McGovern, the Douglas County Sheriff; Dale Flory and Kenneth Fanghor, Douglas County Sheriff's Deputies; and Steve Miles, a Douglas County Appraisal Manager.

Defendants' version of events is markedly different from plaintiff's.

**Summary Judgment Standard**

An important function of summary judgment is to eliminate factually unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 323. The court considers the 'factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.' " *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1182-83 (quoting *Blue Circle Cement, Inc. v. Bd. of County Comm'rs.*, 27 F.3d 1499, 1503 (10th Cir. 1994)); *see also* Fed. R. Civ. P. 56(c). "Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof." *Rohrbaugh*, 53 F.3d at 1183. "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.1997).

Once the movant demonstrates no genuine issue of material fact, the nonmovant is given "wide berth to prove a factual controversy exists." *Jeffries v. Kansas, Dep't of Soc. & Rehab. Servs.*, 147 F.3d 1220, 1228 (10th Cir. 1998)

2

(quotation omitted).  Unsupported conclusory allegations, however, do not create

an issue of fact.  *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004).

"In a response to a motion for summary judgment, a party cannot rely on ignorance

of facts, on speculation, or on suspicion, and may not escape summary judgment

in the mere hope that something will turn up at trial." *Conaway v. Smith*, 3 853

F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence

presents a sufficient disagreement to require submission to the jury or whether it is

so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty

Lobby*, 477 U.S. 242, at 251-52 (1986).

> A pro se litigant's pleadings are construed liberally and judged against

a less stringent standard than pleadings drawn by attorneys.  *Hall v. Bellmon*, 935

F.2d 1106, 1110 (1991).  However, "it is not the proper function of the district

court to assume the role of advocate for the pro se litigant." *Whitney v. State of

New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  The court is not to

"construct arguments or theories for the plaintiff in the absence of any discussion

of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.

1991).

**Facts**

> The following facts are undisputed for purposes of these motions.

3

Plaintiff's residence in Eudora, Douglas County, Kansas, has suffered from repeated flooding problems since he purchased it in 1991.  After 1993, when plaintiff's residence was inundated by seven feet of water, plaintiff sued defendant Douglas County and the City of Eudora in an attempt to gain a nuisance abatement for an undersized culvert near plaintiff's residence which was contributing to the flooding problems.  Thereafter, the County and City replaced the culvert with a bridge, paid plaintiff a sum for his damages, and plaintiff dismissed the suit.

Plaintiff alleges that each year since 2000, Douglas County began to unfairly increase his property valuation.  Plaintiff has appealed his property valuations every year since, and as part of the appeals process has had appeal hearings before either defendant Johnson or defendant Miles.

On July 24, 2002, Miles represented the Douglas County Appraiser's Office in a Small Claims hearing conducted by a hearing officer appointed by the State Board of Tax Appeals concerning plaintiff's appeal of his property valuation. During that meeting, Miles believed the meeting was getting out of control because plaintiff was making personal attacks against him that were accusatory and derogatory.  Accordingly, the hearing officer terminated the meeting.

Following that meeting, plaintiff requested additional information from Miles and another meeting was arranged for July 30, 2002.  Miles told Johnson of

4

his concern about the upcoming meeting, given his perception of plaintiff's conduct at the prior meeting.  Johnson contacted the Douglas County Sheriff's Department and requested that a deputy be available near the appraisal office.  After the July 30th meeting between Miles and Van Deelen began, Johnson believed that the meeting was getting loud and informed Deputy Fangohr that he was going to interrupt the meeting.  Plaintiff was asked to leave the meeting and did so.

Prior to March 30, 2005, plaintiff unsuccessfully appealed prior property valuations made by the Douglas County Appraiser's Office approximately eight times.  Each time plaintiff appealed, he was permitted to provide testimony concerning his belief as to why the appraiser's valuation was wrong, and was able to testify at these hearings and state his opinion that Miles was not telling the truth.

On February 3, 2005, plaintiff sued defendants Douglas County, Miles and Johnson in the U.S. District Court for the District of Kansas, No. 05-2052-CM, alleging constitutional violations related to the alleged improper valuations of his property.   Plaintiff's allegations included that the method used to calculate his 2003 property valuation was illegal and that Miles had committed perjury in testifying before the Board of Tax Appeals about the condition of plaintiff's property.

On March 1, 2005, defendants reduced the valuation of plaintiff's

property by approximately $5,000.00 and plaintiff dismissed his suit.  Defendants

contend the reduction was a result of additional information provided by plaintiff,

but plaintiff contends it was a result of his lawsuit.  (Dk. 63, D's p. 6 of 26).

On March 30, 2005, plaintiff met with Miles in the Appraiser's Office

located in the Old Douglas County Courthouse for another tax appeal hearing.

Johnson had requested that a Douglas County Sheriff's Deputy sit in on the tax

appeal hearing.  Defendants contend this was to make certain that the meeting did

not get out of control, but plaintiff asserts it was because he had recently sued

defendants Johnson, Miles and Douglas County.  Fangohr and Flory, Douglas

County Sheriff's Deputies who were trained in the department's policies and

procedures, were routinely assigned to provide security at the Old Douglas County

Courthouse.  Sheriff McGovern was unaware of any conduct by either Fangohr or

Flory that would have made them unfit to perform their security role.  Defendants

know of no other instance in which sheriff's or police officers were present during

informal or formal tax hearings in Douglas County.

Plaintiff alleges and defendants dispute that when plaintiff was

escorted to Miles' cubicle for the hearing, Miles stated, "Today you get payback

for suing us." Miles' small cubicle  contains a desk and two chairs.  Miles sat at the

desk, plaintiff sat in one chair and defendant Flory, upon entering, sat in the other

6

chair approximately a foot-and-a-half away.  Plaintiff alleges and defendants deny that Flory then scooted his chair over next to plaintiff's chair, causing Flory's leg to bump plaintiff's leg and Flory's arm to bump plaintiff's arm.  Plaintiff admits he did not ask Flory to move away, but contends he gave Flory a funny look and Flory scowled at him.

Plaintiff then asked Miles why the Deputy was in the meeting and Miles told plaintiff that it was because of plaintiff's past actions.[1]  Miles did not shout at plaintiff, but plaintiff felt that Miles was "brow beating" him by staring and scowling during the hearing.  Plaintiff was scared of Flory because he was armed and was afraid Flory was going to use his weapon or shoot him, but plaintiff did not get up and leave.  After an exchange of words, Miles declared the meeting to be over.  Plaintiff contends and defendants dispute that Flory then stood up next to plaintiff, bumped him, and told him he had to leave.

When outside the room where the hearing occurred, plaintiff contends and defendants deny that Flory poked plaintiff's chest once with his finger and said:

Don't come back.  Johnson and Miles are mad because you sued them. They told me to do whatever necessary to put a scare into you.  If you show

[1] Few allegations are made about statements made during the hearing, which are preserved on audio and have been transcribed.  Dk. 63, Exh. B.

up for another tax appeal hearing, I might have to shoot you.

Dk. 66. p. 4, para. 12.  Plaintiff claims this act caused him physical injury, but admits he had no bruise and did not see a doctor or go to a hospital for the pain. Plaintiff claims to have suffered shame and humiliation as a result of these events, but admits he has sought no psychological or medical care.  Plaintiff claims he is afraid to attend any more tax appeal hearings because he is concerned that someone is going to shoot him or initiate a physical confrontation with him, but admits he has entered the same courthouse after March 30, 3005 to renew his car tags.

**Petition**

The court first addresses plaintiff's claim that defendants violated his right to petition the government for redress of grievances, namely, his right to pursue future tax valuation appeals.  Dk. 61, p. 9.[2]  This is apparently based upon the alleged threat made by Deputy Flory, which plaintiff claims deterred him from returning to the courthouse for subsequent tax appeal hearings.  Plaintiff admits he returned to the courthouse for other business, however.

_____

[2]Plaintiff does not claim to have been deterred from filing any claims in the Douglas County courthouse other than tax appeals, and has not been deterred from filing claims in other forums based upon matters other than tax appeals, as the current lawsuit evidences.

8

The First Amendment's petition clause protects a citizen's right of access to governmental mechanisms for the redress of grievances, including the right of access to courts for that purpose. *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 45 Fed. R. Evid. Serv. (LCP) 349 (3d Cir. 1996), *cert. denied*, 117 S. Ct. 131 (U.S. 1997). This right includes the right to petition an administrative agency to take official action in the exercise of its powers. *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir. 1976).

> The first amendment guarantees every citizen's right "to petition the Government for a redress of grievances." U.S. Const. amend I. The Supreme Court has stated that this right is "cut from the same cloth as the other guarantees of [the first amendment], and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482, 105 S. Ct. 2787, 2789, 86 L. Ed. 2d 384 (1985). As an assurance of a particular freedom of expression, the right to petition the government is similar to the right to free speech. Accordingly, courts "analyze an alleged violation of the petition clause in the same manner as any other alleged violation of the right to engage in free speech." *Phares v. Gustafsson*, 856 F.2d 1003, 1009 (7th Cir. 1988); *see Belk v. Town of Minocqua*, 858 F.2d 1258, 1262 & n. 5 (7th Cir. 1988); *Day v. South Park Indep. School Dist.*, 768 F.2d 696, 701 (5th Cir. 1985), *cert. denied*, 474 U.S. 1101, 106 S. Ct. 883, 88 L. Ed. 2d 918 (1986). Therefore, in deciding whether a public employer has wrongfully deprived an employee of his right to petition the government, our inquiry must begin with whether the petition touched upon a matter of public concern by looking at the content, form, and context of the petition. *See Belk*, 858 F.2d at 1262; *Phares*, 856 F.2d at 1009.

*Gray v. Lacke,* 885 F.2d 399, 412 (7th Cir. 1989).

      In the Tenth Circuit, for a public employee to have a viable section 1983 claim under the petition clause, the petition for redress must involve a matter of public concern. *Martin v. City of Del City*, 179 F.3d 882, 889 (10th Cir. 1999).

> There is no question that access to the courts is a constitutionally protected right. Yet, under the law of this circuit, simply claiming a denial of access to the courts is not, in and of itself, a constitutionally protected activity. Rather, the Petition Clause requires that one's petition must comment upon matters of public concern. *Martin v. City of Del City*, 179 F.3d 882, 887 (10th Cir. 1999); *see generally Connick v. Myers*, 461 U.S. 138, 147, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983).

*Van Deelen v. Shawnee Mission Unified School Dist. # 512*, 316 F. Supp. 2d 1052, 1058 (D. Kan. 2004). *See Schalk v. Gallemore*, 906 F.2d 491, 494, 497-98 (10th Cir. 1990); *Pricer v. New Mexico*, 10 Fed. Appx. 733, 2001 WL 505246, (10th Cir. May 14, 2001).

      The same rule has been applied to petitions by plaintiffs who are not public employees.

> ...even outside the public employment context, the Tenth Circuit requires that, in order for speech to be protected, it must touch upon a matter of public concern. Moreover, the filing of a lawsuit to vindicate private rights is not a matter of public concern.

*Van Deelen*, 316 F. Supp. 2d at 1059. *See McCook v. Spriner School District*, 44 Fed. Appx. 896, 904 (10th Cir. 2002) (unpublished) (noting some activities of non-public employee plaintiffs, "were not protected by the First Amendment, for example, filing a lawsuit to vindicate private rights (not a matter of public concern)"), citing *Rice v. Ohio Dep't of Transp.*, 887 F.2d 716, 720-21 (6th Cir.

1989), *vacated on other grounds*, 497 U.S. 1001 (1990); *Howse v. Atkinson*, 2005

WL 1076527, *6 (D. Kan. 2005) (holding that although plaintiff was not a public

employee, the analysis is the same, thus plaintiff must satisfy the public concern

requirement); *Delkhah v. Moore*, 2006 WL 1320255 (D. Kan. May 15, 2006)

(same).

The court thus examines whether the tax appeals which plaintiff was

allegedly deterred from filing are matters of public or private concern .

> "Generally, speech involves a matter of public concern when it is 'of
> interest to the community, whether for social, political, or other reasons,'
> rather than a matter of a mere personal interest to the speaker." *Id.* at 1089
> (citing *Horstkoetter*, 159 F.3d at 1271). "In analyzing whether speech
> constitutes a matter of public concern, [the court] may focus on the motive
> of the speaker and whether the speech is calculated to disclose misconduct
> or merely deals with personal disputes and grievances unrelated to the
> public's interest." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir.
> 2000).

*Howse*, 2005 WL 1076527, *7 (D. Kan. 2005).

Here, assuming that Deputy Flory made the threat as alleged, no matter

of public concern is implicated.  Any tax appeal which plaintiff has not filed but

would have filed absent the alleged threat could challenge solely the amount of tax

to be assessed on his private property and would seek redress for his private

grievances rather than touch upon a matter of public concern.  Tax appeal hearings

are limited forums for the determination of the valuation of residential property,[3]

and are not the proper forum for larger grievances which disclose corruption,

impropriety, or other malfeasance on the part of Douglas County government

officials in their methods of assessment or otherwise.  In other words, plaintiff's

tax appeal would not advance a cause or claim that there is a bigger pattern of

official misconduct.  Rather, the substance of those claims would be aimed solely

at advancing plaintiff's financial interest and achieving only redress for plaintiff's

private grievances.  Because plaintiff fails to show a genuine issue of material fact

regarding the public concern element, summary judgment is warranted on his

Petition Clause claim.  *See Van Deelen*, 316 F. Supp. 2d 1052, 1059-60 (finding

plaintiff's lawsuits alleging due process violations, assault, criminal and terroristic

threats, invasion of privacy, extreme and outrageous conduct by school personnel,

and a civil rights claim under § 1983, "merely seek redress for plaintiff's private

rights.")

**Free speech**

Plaintiff fails to specify the nature of his free speech claim, alleging

only that defendants unlawfully violated plaintiff's right of freedom of speech.  Dk.

---

[3]*See* KSA § 79-1606(d), 1609, 1611.

12

61, p. 7.  Plaintiff's failure to allege which speech is in question and to show that

such speech is protected speech warrants summary judgment.  Nonetheless, in an

abundance of caution, the court considers both the speech during the March 30th

hearing, and the speech from which plaintiff was allegedly deterred by Deputy

Flory's threat.

A review of the record fails to support plaintiff's claim that his speech

was unconstitutionally restricted during the March 30th hearing.  Plaintiff spoke at

some length about his property, its flooding in the past, the likelihood of its

flooding in the future, a study regarding flooding, and his opinion of the value of his

property.  Such matters constitute the majority of the speech during the hearing in

question.

The remainder of plaintiff's speech during the March 30th hearing

consisted of fighting words, not protected by the First Amendment, evidencing that

plaintiff apparently did not feel constrained from expressing his opinions at the

time.  "It is clear that 'fighting words'-those that provoke immediate violence-are

not protected by the First Amendment."  *NAACP v. Claiborne Hardware Co.*, 458

U.S. 886, 927 (1982); *Cannon v. City and County of Denver*, 998 F.2d 867, 872

(10th Cir. 1993).  The Tenth Circuit defines "fighting words" as "epithets (1)

directed at the person of the hearer, (2) inherently likely to cause a violent reaction,

13

and (3) playing no role in the expression of ideas." *Cannon*, 998 F.2d at 873.

*Burns v. Board of County Com'rs of Jackson County*, 330 F.3d 1275 (10th Cir.

2003).   Under the circumstances present in this case, plaintiff's calling a uniformed

law enforcement officer executing his duties a "Nazi" is an epithet directed at the

officer which played no role in the expression of ideas, and was likely to cause a

violent reaction.   These and the other insults flung by plaintiff constitute fighting

words unworthy of the protection of the First Amendment.

　　　　　To the extent plaintiff may claim that Deputy Flory's threat chilled his

right to engage in future speech, the only future speech purportedly chilled is that

which would have been included in plaintiff's subsequent tax appeal pleadings or

hearings.   As noted above, such an appeal would necessarily have challenged only

the amount of tax assessed on plaintiff's private residence.

　　　　　This claim is, under the facts of this case, analytically indistinct from

plaintiff's right to petition, and fails for the reason that such speech is not of general

interest to the public.   *See Burns*, 330 F.3d at 1286 (in determining whether the

speech touches on a matter of public concern, it is not sufficient that the topic of

the speech be of general interest to the public; in addition, what is actually said

must meet the public concern threshold).

**Free assembly/association**

14

Plaintiff next contends that defendants violated his right of assembly by denying him access to the Douglas County courthouse for the purposes of pursuing tax appeals and other purposes, and violated his right of association by denying him access to employees of the Douglas County courthouse.  Dk. 61, p. 7.

The First Amendment prohibits government decision makers from "abridging the freedom of speech, . . . or the right of the people peaceably to assemble."  U.S. Const. amend. I.  *See Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 295 (1981) (emphasizing "the importance of freedom of association in guaranteeing the right of people to make their voices heard on public issues").  The Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities.  *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987).  The right of expressive association stems from the First Amendment, guarding those activities protected by that amendment: speech, assembly, petition for the redress of grievances, and the exercise of religion.  *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984).

These claims, which merely restate plaintiff's complaint about being deterred from filing another tax appeal in person, are subject to the same analysis as are plaintiff's claims brought pursuant to the petition clause and free speech

15

clauses. *McCormick v. City of Lawrence, Kansas,* 253 F. Supp. 2d 1156, 1168 (D. Kan. 2003) (finding " no separate test exists for "pure association" claims," citing *Quinn v. Village of Elk Grove Bd. of Fire and Police Com'rs,* 2002 WL 31875464, at *4 (N.D. Ill. 2002); *See e.g., Grace United Methodist Church v. City of Cheyenne,* __ F.3d __, (10th Cir. June 20, 2006) (analyzing association claim with free speech claim. "The right of access to the courts is ⋯ but one aspect of the right of petition." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972); *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741(1983). Because plaintiff fails to raise a material question of fact that his right to assemble or to associate for the purpose of engaging in protected speech was violated, summary judgment on this claim is warranted.

**Equal Protection**

Plaintiff's equal protection challenge is based upon the fact that Deputy Flory was present during his March 30, 2005, tax appeal hearing but no law enforcement officer was present during tax appeal hearings of other Douglas County taxpayers.

The equal protection clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause requires the government to treat

similarly situated people alike." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).  The equal protection clause's prohibition of differential treatment applies only where individuals are similarly situated.  *See Eisenstadt v. Baird*, 405 U.S. 438, 446-47 (1971).

Plaintiff's allegations do not implicate either a suspect class or a fundamental right.  Therefore, defendants' treatment of plaintiff need only be rationally related to a legitimate government purpose to pass muster under the equal protection clause.  *Grace United Methodist Church,* __ F.3d __, (10th Cir. June 20, 2006); *citing Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1213 (10th Cir. 2002).

"The Equal Protection Clause protects not only against discrimination where victims within an identified classification or group are injured, but also where the plaintiff alleges 'an element of intentional or purposeful discrimination' so as to invoke the clause to protect an individual victim." *Smith v. E. N.M. Med. Ctr.*, 72 F.3d 138, 1995 WL 749712, at *7 (10th Cir. 1995) (quoting *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d at 859).

Plaintiff's allegations may or may not fall under the rubric of a

"class-of-one"[4] equal protection claim, explicitly recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) and subsequent Tenth Circuit cases.  *See, e.g., Grubbs v. Bailes*, 445 F.3d 1275 (10th Cir. 2006); *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210, 1215 (10th Cir.2004).  "As with any equal protection claim, [the plaintiff in a "class of one" case] must also demonstrate that he was treated differently than another who is similarly situated." (quotation omitted)).  *Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir.2001).  This burden is heavy.

> ...for selective and reverse-selective enforcement claims, the plaintiff must "provide compelling evidence of other similarly situated persons who were in fact treated differently," because "the multiplicity of relevant (nondiscriminatory) variables" involved in law enforcement decisions "are not readily susceptible to the kind of analysis the courts are competent to undertake" in assessing equal protection claims.  *Jennings*, 383 F.3d at 1214-15 (quotation omitted).

*Grubbs*, 445 F.3d at 1282.  "Inevitably, the degree to which others are viewed as similarly situated depends substantially on the facts and context of the case."  *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004).

---

[4]In the typical class-of-one case, "a public official inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive." *Jicarilla Apache Nation v. Rio Arriba County,* 440 F.3d 1202, 1209 (10th Cir. 2006).

"The requirement that a plaintiff show that similarly situated persons were treated differently "is especially important in class-of-one cases." *Jennings*, 383 F.3d at 1213." *Jicarilla Apache Nation*, 440 F.3d at 1212.  Courts deciding summary judgment motions in such cases "have insisted that plaintiffs demonstrate similarity in all material respects." *Id.*

> ...the degree of similarity an equal protection plaintiff needs to show will vary inversely with the size of the relevant class.  If a plaintiff belongs to a large class, a systematic difference in treatment probably is not caused by individualized differences or statistical aberrations.  But when the class consists of one person or entity, it is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable.  Accordingly, courts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one cases.

*Id.*, 440 F.3d at 1213.

Here, because of defendants' prior dealings with plaintiff in tax appeal hearings, defendants had reason to believe prior to the March 30th hearing that plaintiff might make personal attacks and become  rude, insulting or disruptive during the March 30th tax appeal hearing.  Prior to that date, plaintiff had appealed approximately eight times from other property valuations made by the Douglas County Appraiser's Office.  The record reveals specific examples of the parties' history.  During their July 24, 2002 meeting, Miles believed the meeting was getting out of control because plaintiff was making personal attacks against him that were

accusatory and derogatory, and the meeting was therefore terminated.  During their

July 30th, 2002 meeting, a nearby law enforcement officer believed that the meeting

was getting loud, interrupted the meeting, and asked plaintiff to leave, thus

terminating the meeting.

Plaintiff thus had a track record with the Douglas County Appraiser's

Office on which defendants based their perception of plaintiff in such proceedings.

Defendants' belief[5] that plaintiff was inclined to engage in ad hominem attacks and

to become disruptive establishes a relevant difference between plaintiff and other

taxpayers that reasonably might account for defendants' different treatment of

plaintiff on March 30th.

Defendants' judgment that the presence of a law enforcement officer

might assist in deterring plaintiff from such attacks or in keeping the peace during

plaintiff's tax appeal hearing was rationally based upon their perception of

plaintiff's behavior.  The court's review of the transcript of the recorded March

30th tax hearing produces a firm conviction that defendants' perception of

plaintiff's potential demeanor was, in fact, well founded.  *See* Dk. 63, Miles

_____

[5]*Cf, Brown v. Evans*, 85 Fed. Appx. 135, *142, 2004 WL 27735, *7 (10th
Cir. 2004) (finding where a plaintiff in a discrimination case seeks to meet his
burden of showing that he and other employees were similarly situated, it is not the
plaintiff's perception of the facts, but the employer's which controls.)

20

affidavit, Exh. B (showing that during the hearing, plaintiff interrupted the hearing

officer, redirected the conversation, asked the hearing officer questions, and stated,

among other abrasive words: "I'm going to file a federal civil rights lawsuit against

you for attempted intimidation for having a Nazi ah, Douglas County Sheriff's

Department officer here..."; "You guys are dumber than a box of rocks";  "Kiss

my ass and I'll see you in court." )

            In short, plaintiff fails to identify any taxpayer known by defendants

to have previously engaged in problematic conduct of comparable seriousness, and

was thus situated similarly to plaintiff, who received different treatment.

Additionally, defendants had an objectively reasonable basis for their treatment of

plaintiff, rationally related to a legitimate government interest of maintaining order

and security at the courthouse.  Accordingly, plaintiff fails to show that defendants'

acts were irrational and wholly arbitrary, and fails to raise a material question of fact

regarding his equal protection claim.[6]

                              **Invasion of privacy**

_____

[6]This same analysis controls and the same result is reached to the extent
plaintiff may claim that he was denied equal protection by the alleged unfair
valuation of his property .  *See Jicarilla Apache Nation*, 440 F.3d at 1210 (finding
summary judgment appropriate on class of one equal protection claim if it finds
either a rational basis for the treatment or a material difference between the
properties).  Plaintiff has made no attempt in this record to show his property was
similarly situated to that of other taxpayers whose property was treated differently.

Plaintiff next contends that defendants invaded his privacy in violation of § 1983 "by requiring him to disclose confidential tax information in the presence of Defendant Flory during the March 30, 2005 tax appeal hearing."  Dk. 61, p. 9.

The court recognizes that an informational privacy right does exist in certain circumstances.  Informational privacy "protects the individual from governmental inquiry into matters in which it does not have a legitimate and proper interest." *Aid for Women v. Foulston*, 441 F.3d 1101, 1116 (10th Cir. 2006).

> There exists a constitutional right to privacy in certain forms of personal information possessed by the state if "an individual has a legitimate expectation ⋯ that it will remain confidential while in the state's possession." (Citations omitted).

*Gallo Loecks ex rel. T.L. v. Reynolds,* 34 Fed. Appx. 644, 648, 2002 WL 539111, *4 (10th Cir. 2002).

No reasonable expectation of privacy exists, however, in matters included in a public record or stated in an open hearing.

> It is well established under the law dealing with actions for invasion of privacy that no reasonable expectation of privacy attaches to those matters that are a matter of public record.  *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 [95 S. Ct. 1029, 43 L. Ed. 2d 328] (1975)... It is equally well established that what transpires in open court is a matter of public record. *Nixon v. Warner Communications*, 435 U.S. 589, 597 [98 S. Ct. 1306, 1311, 55 L. Ed. 2d 570] (1978).

*Rodgers v. Hyatt*, 697 F.2d 899, 902 (10th Cir. 1983).  Additionally, a person who

causes the matter in question to become public knowledge cannot bring a cause of

action for damages flowing from that disclosure. *Id*, at 903.

Plaintiff has failed to specify what confidential tax information he

believes he was compelled to disclosed during the hearing.  This alone merits

summary judgment against him on this claim.  But in an abundance of caution, the

court has reviewed the transcript of the hearing and finds therein no tax information

in which a legitimate expectation of confidentiality existed[7] which plaintiff publically

disclosed, whether under compulsion or not.  Summary judgment on this claim is

thus appropriate.

**Due process claims**

Plaintiff also brings substantive and procedural due process claims.

Where a litigant challenges governmental action under the Due Process Clause and

under another, more specific constitutional provision, the claim is properly analyzed

under the more specific provision.  *United States v. Hernandez*, 333 F.3d 1168,

1174 (10th Cir. 2003) (analyzing a claim under the more specific Sixth Amendment

right to counsel, rather than the more generalized notion of Fifth Amendment due

---

[7]The court notes that plaintiff's tax records maintained by the Douglas
County appraiser which were discussed during plaintiff's tax appeal are available to
the public on-line.  *See* http://www.douglas-county.com.

process).  *See, e.g., Bateman v. City of West Bountiful*, 89 F.3d 704, 709 (10th Cir.1996) (analyzing a claim under the Takings Clause rather than the Due Process or Equal Protection Clauses); *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (analyzing a claim of excessive force by the police under the Fourth Amendment rather than under "the more generalized notion of 'substantive due process' ").  This is precisely what plaintiff has done in this case by bringing claims under the due process clause as well as under the petition clause, the free speech clause, and the equal protection clause.  Accordingly, the court declines to address plaintiff's due process claims because it has analyzed his claims under the more specific petition and free speech clauses, among others.

Alternatively,  plaintiff cannot prevail on such claims in the event the court would chose to reach them.  Summary judgment is warranted on plaintiff's substantive due process claim because the facts alleged by plaintiff do not tend to demonstrate a "degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking...."  *Valdez v. New Mexico,* 109 Fed. Appx. 257, 261, 2004 WL 1949130, *3 (10th Cir. 2004) (citation omitted).  Similarly, summary judgment is warranted on plaintiff's procedural due process claim because plaintiff fails to raise a material question of fact that defendant's wrongful acts deprived him of any protected liberty or property interest and for the

24

independent reason that defendant shows the court plaintiff has received all the process he was due.

**Conspiracy**

Plaintiff next contends that defendants Miles, Johnson, Fangohr and Flory conspired to: 1) assault and batter him; and 2) deny him due process, equal protection, freedom of speech, freedom of association and freedom of assembly.

The fundamental elements of a § 1983 conspiracy claim are an agreement between the parties and concerted action in furtherance of that agreement.  *See Reed v. Dunham*, 893 F.2d 285, 287 (10th Cir. 1990).  To state a valid claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants."  *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998).  "Mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."  *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983).

Plaintiff's allegation of a conspiracy amongst Douglas County government officials to assault and batter him is not actionable under § 1983.  Assault and battery is a state law claim.  "Section 1983 does not... provide a basis for redressing violations of state law, but only for those violations of federal law

done under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L. Ed. 2d 572 (1980)." *Jones v. City and County of Denver, Colo.*, 854 F.2d 1206, 1209 (10th Cir. 1988).

Plaintiff's claim of a conspiracy to deprive him of due process, equal protection, freedom of speech, freedom of association or freedom of assembly does allege violations of federal law done under color of state law.   But beyond that, the court must speculate as to the nature of defendant's claim.  Because plaintiff has failed to allege specific facts showing an agreement and concerted action amongst the defendants, summary judgment is warranted on this claim.

Alternatively, the agreements reflected in the record provide an insufficient basis for trial. Although plaintiff fails to specify the nature of the agreement at issue, the court's review of the record reveals two that may be alleged. The first agreement reflected in the record is that certain defendants agreed to have a law enforcement officer sit in, and did have a law enforcement officer sit in, on plaintiff's March 30th tax appeal hearing because of their perception of plaintiff's past behavior.  Neither that act, nor that agreement violated any of plaintiff's constitutional rights.

The only other evidence of agreement in the present case is plaintiff's affidavit that Deputy Flory said that Johnson and Miles said to do whatever was

necessary to scare plaintiff.  Specifically, plaintiff alleges Deputy Flory said:

> Don't come back.  Johnson and Miles are mad because you sued them.
> They told me to do whatever necessary to put a scare into you.  If you show
> up for another tax appeal hearing, I might have to shoot you.

Dk. 66. p. 4, para. 12.

This allegation fails to carry plaintiff's burden of alleging the facts

necessary to support his claim of conspiracy as it is inadmissible  hearsay,[8] is

conclusory and is thus doubly deficient.  Plaintiff has failed to raise a material

question of fact of an agreement and concerted action by defendants Miles,

Johnson, Fangohr and Flory to deprive him of his civil rights or any of them.

**Retaliation**

Plaintiff claims that defendants retaliated against him for his exercise of

free assembly, association, speech, due process, equal protection and equal access

to the courts.

"It has long been clearly established that the First Amendment bars

retaliation for protected speech and association.  *See Crawford-El v. Britton*, 523

U.S. 574, 592, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); *Pickering v. Bd. of*

---

[8]This out of court statement is double hearsay, inadmissible unless each part
of the combined statements conforms with an exception to the hearsay rule. Fed.
R. Evid. 805.

*Educ.*, 391 U.S. 563, 574, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)." *Mimics, Inc.*

*v. Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005).  The Tenth Circuit

has recently clarified the legal standard to be applied when, as here, allegations of

retaliatory conduct are directed at a defendant who is not the plaintiff's employer

and with whom defendant has no contractual relationship.  In such cases, a plaintiff

is required to prove the following elements:

> (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  *Id.*

*Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).[9]  The first of these

elements is addressed below.

### Constitutionally protected activity

The court's analysis above concludes that a reasonable factfinder

could not find for the plaintiff on the first element-that he was engaged in

constitutionally protected activity- as to the issues addressed above.  Nonetheless,

---

[9]These elements are analogous to those required in Title VII retaliation cases based upon circumstantial evidence, but the Tenth Circuit has not directed that another standard be used where direct evidence supports a claim that the state actors retaliated against a citizen for his exercise of constitutional rights.  It would appear that direct evidence of retaliation would meet the third element but would not obviate the necessity of meeting the first two elements.

plaintiff may additionally contend[10] that his protected conduct is having previously

filed a lawsuit against defendants Johnson, Miles and Douglas County in case No.

05-2052-CM.

> The court thus examines whether plaintiff's 2005 lawsuit against those

defendants was protected conduct.

> "Whether an employee's speech addresses a matter of public concern must
> be determined by the content, form, and context of a given statement, as
> revealed by the whole record." *Connick*, 461 U.S. at 147-48, 103 S. Ct.
> 1684.  In determining whether the speech touches on a matter of public
> concern, we look to whether it can "be fairly considered as relating to any
> matter of political, social, or other concern to the community." *Id.* at 146,
> 103 S. Ct. 1684.  It is not sufficient that the topic of the speech be of general
> interest to the public; "in addition, what is actually said must meet the public
> concern threshold." *Schalk*, 906 F.2d at 495.  Moreover, under our
> precedent, the speech must "sufficiently inform the issue as to be helpful to
> the public in evaluating the conduct of the government." *Lee v. Nicholl*, 197
> F.3d 1291, 1295 (10th Cir. 1999) (quotation omitted).

*Burns* , 330 F.3d at 1286.

> Plaintiff's 2005 lawsuit included a claim that Douglas County

government officials used an illegal method of property valuation,[11] and that

---

[10]The language of the pretrial order regarding this claim is vague and
ambiguous.  *See* Dk. 61, p. 6,7, para. 1.

[11]Specifically, it stated, "The defendants used an illegal, unconstitutional
method to calculate the 2003 valuation for plaintiff's property. The method used by
the defendants was last year's value adjusted for time. *See* Exhibit A." *Van Deelen
v. Johnson, et al*, No. 05-2052-CM, Dk. 1, p. 3, para. 10.

defendant Miles committed perjury in his testimony during plaintiff's tax appeal

hearings.  But the specific language used in plaintiff's complaint challenges solely

the method used to value his personal property and statements made by Miles

during plaintiff's tax appeal hearings.  The challenged valuation method is not

alleged to have been used in conducting anyone else's property assessment.  An

improper method of assessing plaintiff's property, and his alone, could not, in this

court's judgment, "be fairly considered as relating to any matter of political, social,

or other concern to the community" or "sufficiently inform the issue as to be

helpful to the public in evaluating the conduct of the government." *Lee*, 197 F.3d

at 1295.  Similarly, the allegedly perjurious statements made by defendant Miles

during plaintiff's tax appeal hearings are that plaintiff's property contains a shed, a

lower-level garage, and a functional fireplace, etc., matters of private and not public

concern.

    Because plaintiff's 2005 lawsuit merely sought to redress personal

grievances and did not comment upon matters of public concern, his filing of that

lawsuit was not protected conduct.  *See Van Deelen*, 316 F. Supp. 2d at 1059;

*McCook v. Spriner School District*, 44 Fed. Appx. 896, 904 (10th Cir. 2002)

(unpublished) (noting some activities of non-public employee plaintiffs, "were not

protected by the First Amendment, for example, filing a lawsuit to vindicate private

rights (not a matter of public concern)"), *citing Rice v. Ohio Dep't of Transp.*, 887 F.2d 716, 720-21 (6th Cir. 1989), *vacated on other grounds*, 497 U.S. 1001 (1990); *Howse v. Atkinson*, 2005 WL 1076527, *6 (D. Kan. 2005) (holding that although plaintiff was not a public employee, the analysis is the same, thus plaintiff must satisfy the public concern requirement); *Delkhah v. Moore*, 2006 WL 1320255 (D.Kan. May 15, 2006) (same). The court therefore finds it unnecessary to address the remaining two elements of this claim.

**Policy**

Plaintiff additionally contends that the Douglas County Commissioners have established a policy in which defendants "harass, intimidate, shadow, assault, batter and threaten the plaintiff in order to frustrate and chill plaintiff in the pursuit of his civil rights..." Dk. 61, p. 8.

Where a court determines that the individual defendants committed no constitutional violation, municipal liability may not be imposed. *Butler v. City of Prairie Vill.*, 172 F.3d 736, 747 (10th Cir. 1999). Thus summary judgment is warranted on this claim. But even assuming that the court errs in finding no violation of plaintiff's constitutional rights by the individual defendants, this claim fails for the reasons set forth below.

In order to state a claim against the county, the plaintiff must show that

31

the allegedly unconstitutional actions resulted from a policy or custom adopted or

maintained with deliberate indifference to his constitutional rights.  *Monell v. Dep't*

*of Social Servs*., 436 U.S. 658, 690, 690 n. 55 (1978).  Under this standard, plaintiff

must identify a "policy" or "custom" that caused his injury.  *Board of County*

*Com'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).

> He must also show that the policy or custom was the "moving force"
> behind the injury alleged and he must demonstrate "the requisite degree of
> culpability and ⋯ a direct causal link between the municipal action and the
> deprivation of federal rights."  *Bd. of County Comm'rs v. Brown*, 520 U.S.
> 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *see also Myers v.*
> *Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir.1998)

*Martinez v. Montrose Sheriff's Dept*., 12 Fed. Appx. 837, 838, 2001 WL 640397,

*1 (10th Cir. 2001).

Plaintiff has not identified a policy adopted by a duly constituted

legislative body of Douglas County.  *See Pembaur v. City of Cincinnati*, 475 U.S.

469, 483 (1986).  Nor has plaintiff identified a custom that "is so widespread as to

have the force of law" in connection with the claims alleged in the pretrial order.

*Brown*, 520 U.S. at 404.          Instead, plaintiff appears to believe that because

events of March 30th occurred , they must have been pursuant to a custom or

policy.  But a plaintiff cannot prove that a county adheres to a particular custom or

policy based solely on his perceptions extrapolated from a single, isolated incident.

*Jarrett v. Schubert*, 1998 WL 471992, *8 (D. Kan. 1998).

On the record before this court, even assuming that Deputy Flory's acts constituted a violation of plaintiff's constitutional rights, there is nothing to indicate that any "policy or custom" of Douglas County deprived plaintiff of any constitutional right.  Plaintiff's affidavit contends that Deputy Flory said that Johnson  and Miles told him to do whatever necessary to scare plaintiff.  This alleged agreement is not actionable because neither Johnson nor Miles could be considered a final policymaker for the establishment of county law enforcement policy.  No evidence shows any actions by the County Commissioners, and *Monnell* expressly precludes suits premised on the theory of *respondeat superior*. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691(1978).  Accordingly, summary judgment is warranted on plaintiff's claim under 42 U.S.C. § 1983 against the Douglas County Commissioners.[12]

**Qualified immunity**

The court need not determine whether the law was clearly established with respect to each of the claims against the defendants sued in their individual

------

[12]Claims against individual defendants in their official capacities are redundant and subject to summary judgment because plaintiff has also sued the County itself.

capacities, because the lack of a constitutional violation makes it unnecessary to further address qualified immunity.  *Jicarilla Apache Nation,* 440 F.3d at 1214. *See Roska v. Peterson*, 328 F.3d 1230, 1239 (10th Cir. 2003) (absent constitutional violation, plaintiff cannot overcome qualified immunity defense).  At the very least, the law was not clearly established that plaintiff's conduct was constitutionally protected on those claims which include a public concern element, thus entitling the individual defendants to qualified immunity on claims including plaintiff's petition, free speech, association, assembly, conspiracy and retaliation claims.

**State Law Claims**

The preceding analysis disposes of plaintiff's claims arising under federal law, extinguishing the bases for federal subject matter jurisdiction. Accordingly, this court may decline to exercise continuing "pendent" or supplemental jurisdiction over plaintiff's state claims.  28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966).  The court therefore dismisses without prejudice plaintiff's state law claims.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Dk. 65) is denied, that defendant's motion for summary judgment (Dk. 62) is granted on plaintiff's federal claims, and that plaintiff's state law claims are dismissed without prejudice.

34

IT IS FURTHER ORDERED that defendant's motion to amend

exhibit list for trial (Dk. 70) is denied as moot.

Dated this 27th  day of June, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge