IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL D. VAN DEELEN,

                Plaintiff,

      Vs.                                         No.  05-4039-SAC

MARION JOHNSON,
STEVEN MILES,
DALE FLORY,
KENNETH FANGOHR,
KEN McGOVERN, and
THE BOARD OF COUNTY COMMISSIONERS
     OF DOUGLAS, KANSAS,

                Defendants.


MEMORANDUM AND ORDER


      This civil rights case comes before the court on remand from the Tenth

Circuit dated August 14, 2007. *See Van Deelen v. Johnson*, 497 F.3d 1151 (10th

Cir. 2007). Given the Tenth Circuit's direction that this court conduct additional

summary judgment proceedings in this case, the court permitted supplemental

briefing on the remaining claims. Having reviewed the supplemental briefs and

evidence, the court is ready to reexamine these claims.

**Procedural background**

Neither party takes issue with the court's prior order stating that plaintiff's right to petition claim, as stated in Theory 17 of the pretrial order, will be set for trial at a later date, and that summary judgment is warranted in defendants' favor on following claims: substantive due process; procedural due process; equal protection; §1983 conspiracy to assault and batter; §1983 conspiracy to violate due process, equal protection, free speech, free association and free assembly; §1983 policy; and §1983 invasion of privacy; as respectively set forth in Theories 3, 4, 7, 9, 10, 11 and 18 of the pretrial order. Because the Tenth Circuit affirmed summary judgment in defendant's favor on those claims, they are not at issue and shall not be addressed herein.

The recent briefs have largely incorporated factual statements from prior briefs. To the extent additional material facts have been established in defendants' recent briefs, the court will address them below as relevant.[1] The court will not restate the controlling legal standards for summary judgment but instead incorporates all portions of its prior memoranda and orders in this case to the extent not reversed by the Tenth Circuit.

**Free Speech**

---

[1] Defendants' Motion for Order to Substitute Documents (Dk. 87) shall be granted as unopposed.

The nature of plaintiff's free speech claim is amorphous. Plaintiff fails to specify the nature of his free speech claim,[2] alleging only that defendants "unlawfully violated his right of freedom of speech.. . as detailed herein." Dk. 61, p. 7. The only "detail" supporting a free speech claim is that during the March 30th hearing, "Plaintiff became so nervous because of the Defendants' actions that he forgot and was not able to ask many of the questions had intended to ask Defendant Miles concerning his property's valuation.  Before Plaintiff had concluded asking questions, Defendant Miles declared the meeting to be over." *Id.* p. 5.

The hearing occurred in Defendant Miles' work area in the Douglas County Courthouse, which was a cubicle in close proximity to other employees. This was a "limited public forum," which "arises where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum." *Summum v. City of Ogden*, 297 F.3d 995, 1002 n. 4 (10th Cir.2002) (internal quotation omitted). Government restriction on speech in such a forum must only be reasonable in light of the purpose served by the forum and be viewpoint neutral. *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995);

---

[2]The First Amendment provides in pertinent part that "Congress shall make no law ... abridging the freedom of speech."

*Shero v. City of Grove, Okl*., 510 F.3d 1196, 1202 -1203 (10th Cir. 2007).

For purposes of a First Amendment free speech analysis," there is a significant governmental interest in conducting orderly, efficient meetings of public bodies." *Rowe v. City of Cocoa, Florida*, 358 F.3d 800, 803 (11th Cir.2004). The Tenth Circuit recently applied this rule in *Shero v. City of Grove, Okl*., 510 F.3d 1196, 1203 (10th Cir. 2007), to find no free speech violation because a time restriction on speech at a city council meeting was "appropriately designed to promote orderly and efficient meetings."  Cases from other jurisdictions are in accord. *See Eichenlaub v. Township of Indiana*, 385 F.3d 274, 277, 281 (3rd Cir.2004) (affirming denial of claim that claimant's First Amendment rights were violated by curtailing his speech during public meeting and removing him from meeting); *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir.1995) (noting rent control board's "legitimate interest in conducting efficient, orderly meetings"); *Collinson v. Gott*, 895 F.2d 994, 1000 (4th Cir.1990) (Phillips, J., concurring in judgment) ("[D]isruption of the orderly conduct of public meetings is indeed one of the substantive evils that [government] has a right to prevent.");*White v. City of Norwalk*, 900 F.2d 1421, 1422-23, 1425 (9th Cir.1990) (affirming district court's rejection of First Amendment and equal protection challenge based on moderator's decision to rule speaker at city council meeting out

of order and noting that council does not violate First Amendment by restricting speakers to subject at hand or by stopping speaker if speech becomes irrelevant or repetitious); *Wright v. Anthony*, 733 F.2d 575, 577 (8th Cir.1984) (noting "significant governmental interest in conserving time and ensuring that others had an opportunity to speak" at public hearing). *See also Cornelius v. NAACP Legal Defense and Educational Fund, Inc*., 473 U.S. 788, 805-806 (1985) (finding that the Government has the right to exercise control over access to its workplace in order to avoid interruptions to the performance of the duties of its employees).

The record shows that plaintiff's informal hearing on March 30th lasted for over 23 minutes.  During that time, plaintiff spoke at length about his property, its past flooding, the likelihood of its flooding in the future, a study regarding flooding, and his opinion of the value of his property. The transcript of plaintiff's statements made during the hearing fails to support a claim that plaintiff's speech was unconstitutionally restrained during the hearing. Dk. 63, Miles affidavit, Exh. B.  Instead, the content of the words plaintiff actually spoke and the amount of time he was given in which to deliver them evidence plaintiff's ability to freely express his substantive opinions at the time.

Further evidence that plaintiff's speech was substantially unrestricted during the hearing is shown by the liberties plaintiff was permitted to take during the

hearing. Plaintiff frequently interrupted the hearing officer, redirected the conversation, asked the hearing officer questions, and flung abrasive comments at Miles and Flory, including the following: "I'm going to file a federal civil rights lawsuit against you for attempted intimidation for having a Nazi ah, Douglas County Sheriff's Department officer here..."; "You guys are dumber than a box of rocks"; and "Kiss my ass and I'll see you in court."  The quoted words are fighting words[3] not protected by the First Amendment. *See  NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982); *Cannon v. City and County of Denver*, 998 F.2d 867, 872 (10th Cir.1993).  The content and manner in which all of plaintiff's statements were made during the hearing contradict plaintiff's claim that his protected speech was unconstitutionally restricted during the March 30th hearing.

The record does reflect that plaintiff was told, soon after the hearing commenced, that they "had about 20 minutes" for the hearing, and that after 23 minutes, plaintiff was told, "This hearing is over." Plaintiff immediately responded, "Yes, it is," then stated his intent to speak to Flory's boss and asked where to find him.  Plaintiff made no assertion at the termination of the hearing that he wished to have more time in which to ask additions questions or that he had

---

[3]*See Burns v. Board of County Com'rs of Jackson County*, 330 F.3d 1275 (10th Cir. 2003) (defining"fighting words" as "epithets (1) directed at the person of the hearer, (2) inherently likely to cause a violent reaction, and (3) playing no role in the expression of ideas.")

forgotten any questions he had intended to ask. To the extent defendant's acts at the hearing may have caused plaintiff to forget some of the things he wanted to say, that injury was *de minimus*. *See Shero*, 510 F.3d at 1204 (finding the City's implementation of a time limitation on speech to be at best, a *de minimis* injury).

The court finds that the enforcement of the twenty-minute time limitation was a reasonable measure, serving to promote orderly and efficient discussion of relevant issues, and to deter irrelevant debate and disruptive behavior during the hearing, thus precluding such hearings from dragging on interminably and denying others the opportunity to engage in similar hearings or preventing Miles from doing his job. No material question of fact has been raised that the time restriction on the length of the hearing was any greater than was reasonably necessary to permit defendants to perform their duties as employees.

To the extent that plaintiff made have intended to claim a free speech deprivation other than during the March 30th hearing, the well-pleaded facts, viewed in the light most favorable to the plaintiff, fail to sufficiently allege violation of a free speech right.[4]  *See Moya v. Schollenbarger*, 465 F.3d 444, 457

---

[4]The pretrial order does not include a claim that plaintiff's conduct on or after March 30th was inherently expressive, s*ee Rumsfeld v. Forum for Academic and Institutional Rights, Inc*., 547 U.S. 47 (2006), or any allegation of prior restraint. Therefore, the court will not address those issues. *See Bruner v. Baker,* 506 F.3d 1021 (10th Cir. 2007) (finding district court properly ignored version of a retaliation claim not included in complaints but first raised in a summary judgment response.)

(10th Cir. 2006), citing *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1270 (10th

Cir.1989) ("[C]onclusory allegations ... are insufficient to state a claim under the

First Amendment.") Therefore, the court finds that summary judgment is warranted

on this claim (paragraph 8 of the pretrial order).

**Assembly/Association**

Plaintiff contends that defendants violated his right of assembly by denying

him access to the Douglas County, Kansas Courthouse for purposes including the

pursuit of tax appeals, and violated his right of association by denying him access

to employees of the Douglas County Courthouse for the purpose of pursuing tax

appeals and other purposes. Dk. 61, p 7, paras. 5 and 6.

The First Amendment reads "Congress shall make no law ... abridging ...

the right of the people peaceably to assemble..." The right to assemble peaceably is

among the most precious of the liberties safeguarded by the Bill of Rights, and is

intimately connected both in origin and in purpose with the other First Amendment

rights. *See United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*,

389 U.S. 217, 222 (1967). The First Amendment also implicitly protects the

freedom to expressive association. *Roberts v. United States Jaycees*, 468 U.S. 609,

622 (1984); *Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 295

(1981) (emphasizing "the importance of freedom of association in guaranteeing the

right of people to make their voices heard on public issues").

The Tenth Circuit has recently found that The First Amendment protects

associational and assembly rights in two distinct ways:

> First, the Court has held that the Constitution protects against unjustified
> government interference with an individual's choice to enter into and
> maintain certain intimate or private relationships. Second, the Court has
> upheld the freedom of individuals to associate for the purpose of engaging in
> protected speech or religious activities.
> *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544, 107
> S.Ct. 1940, 95 L.Ed.2d 474 (1987). "Of course, the right of association is no
> more absolute than the right of free speech or any other right; consequently
> there may be countervailing principles that prevail over the right of
> association." *Walker v. City of Kansas City*, 911 F.2d 80, 89 n. 11 (8th
> Cir.1990).

*Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 658 (10th Cir.

2006) (finding no violation of right of association by zoning ordinance which

prohibited church from operating a day care facility in residential neighborhood).

Plaintiff asserts a violation of his expressive associational rights.[5]  But the

right of association and the right of assembly protect an individual's ability to join

with others or engage in group effort for a common purpose.  *See e.g., Boy Scouts

of Am. v. Dale*, 530 U.S. 640, 678 (2000) (finding "... [W]hen the State interferes

with individuals' selection of those *with whom they wish to join in a common*

---

[5]The court declines to adopt defendant's view that only the expressive rights noted by the
Tenth Circuit, *i.e*., protected speech or religious activities, are protected by the right of
association.

9

*endeavor*, freedom of association ... may be implicated.) (emphasis added); *Cox v. State of La.,* 379 U.S. 536, 554-555 (1965); *National Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson,* 357 U.S. 449, 460-461, 463 (1958) (protecting the ability of NAACP "members to pursue their collective effort to foster beliefs.") *See* Raggi, An Independent Right to Freedom of Association, 12 HARV.C.R.- C.L.L.REV. 1, 1 (1977) (freedom of association is "little more than a shorthand phrase used by the Court to protect traditional first amendment rights of speech and petition as exercised by individuals in groups").

The reason for extending First Amendment protection to the right of expressive association is because an individual's right to speak is often exercised most effectively when combined with other voices. *Rumsfeld v. Forum for Academic and Institutional Rights, Inc*., 547 U.S. 47, 68 (2006).

> An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless *a correlative freedom to engage in group effort toward those ends* were not also guaranteed. *See, e.g., Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley*, 454 U.S. 290, 294, 102 S.Ct. 434, 456, 70 L.Ed.2d 492 (1981). According *protection to collective effort on behalf of shared goals* is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority. (Citations omitted.)
> Consequently, we have long understood as implicit in the right to engage in activities protected by the First Amendment *a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.*

*Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) (emphasis added) (noting infringement of right of association may occur when government seeks to impose penalties or withhold benefits from individuals because of their membership in a disfavored group, when government requires disclosure of the fact of membership in a group seeking anonymity, or when government tries to interfere with the internal organization or affairs of the group.)  No effort to combine plaintiff's voice with others is alleged in this case.

Assuming that defendants barred plaintiff from entering the courthouse for tax-related purposes or from conducting tax-related business with a county employee, defendants' acts have not been shown to have had any impact upon any group with which plaintiff is associated or to have imposed any adverse action upon plaintiff because of his association with any group. *Compare NAACP v. Button*, 371 U.S. 415, 430 (The right of association is one form of 'orderly group activity', protected by the First Amendment); *NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958) (The right 'to engage in association for the advancement of beliefs and ideas', is one activity of that nature that has First Amendment protection); *Griswold v. Connecticut*, 381 U.S. 479, 483 (1965) (The right of association is more than the right to attend a meeting and it includes the right to express one's attitudes or philosophies by membership in or affiliation with

a group.) Plaintiff has not shown that defendant's denial, if any, of his access to the Douglas County, Kansas Courthouse employees falls within the protection of the right to associate.  *See Williams v. Hathaway,* 400 F.Supp. 122, 126 -127 (D.Mass.1975) (finding freedom of association did not protect nudist's effort to use public beach where nudist did not claim that he went to beach for organizational or associational purposes, and his purpose and intent was more individualistic than associational.)

Similarly, the court finds that defendant's denial, if any, of plaintiff's access to the Douglas County, Kansas Courthouse has not been shown to fall within the protection of the right to assemble.[6] The right of assembly is the right to physically hold and attend meetings, marches, pickets, demonstrations, parades, and the like. *See Hague v. Committee for Indus. Org.*, 307 U.S. 496, 512 (1939). *See also* John E. Nowak & Ronald D. Rotunda, Constitutional Law § 16.54, at 1130 (4th ed. 1991); C. Edwin Baker, Scope of the First Amendment Freedom of Speech, 25 UCLA L. Rev. 964, 1030-32 (1978) (stating that "an association is merely an assembly dispersed over time and space.")

---

[6]The court finds no support for plaintiff's tacit assertion that an individual can "assemble," as that term is used in the First Amendment, with himself or with a building. *See* Black's Law Dictionary (6th ed. 1990), p. 115 (defining "assemble" as: "The concourse or meeting together of a considerable number of persons at the same place.  Also the persons so gathered."); Black's Law Dictionary (8th ed. 2004) (defining the "right of assembly" as the right of the people to gather peacefully for public expression of religion, politics, or grievances).

Plaintiff asks the court to paint with a broad brush and not to analyze his rights of speech, assembly, and association separately from his right to petition. Reasoning that the Tenth Circuit upheld his right to petition claim, plaintiff urges this court to uphold his other First Amendment claims because they are tied together.  It is true that the right to petition "is cut from the same cloth as the other guarantees of [the First] Amendment...." *McDonald v. Smith*, 472 U.S. 479, 482 (1985), and that the rights to free speech, peaceable assembly, expressive association and petition have been called "inseparable." *See Thomas v. Collins*, 323 U.S. 516, 530 (1945).

Nonetheless, the Tenth Circuit has already tacitly rejected plaintiff's position in this case by parsing plaintiff's petition claim from his other First Amendment claims. It remanded this case for the court's determination of whether "proper but as-yet unanalyzed grounds for summary judgment or qualified immunity may exist" on plaintiff's claims of free speech, assembly, and association violations, despite its having found summary judgment inappropriate on plaintiff's claim of petition violation. *Van Deelen ,*497 F.3d at 2259. Accordingly, summary judgment is warranted on plaintiff's claims that defendants restricted his right to assembly and association. (para 5 and 6 of PTO)

**Retaliation claims**

Plaintiff brings two retaliation claims under §1983. These are that defendants retaliated against him for his having previously sued defendants Johnson, Miles and the County (No. 05-2052), and that defendants retaliated against him for his exercise and attempted exercise of his First Amendment freedoms and other constitutional rights. Dk. 61, p. 7.

*Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir.2000), establishes the following elements for a retaliation claim where the governmental defendant is neither the plaintiff's employer nor a party to a contract with the plaintiff:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Id.* (quotations omitted). "[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective ... a trivial or de minimis injury will not support a retaliatory prosecution claim.*" Eaton v. Meneley*, 379 F.3d 949, 954-55 (10th Cir.2004) (internal quotation omitted).

*Shero v. City of Grove*, *Ok.,* 510 F.3d at 1203.

Defendants challenge only the second of these elements, claiming their actions did not cause the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. Defendants focus upon the undeterred nature of plaintiff's conduct, showing that plaintiff sought out

and spoke his mind to Deputy Fangohr immediately after the March 30th hearing, that plaintiff later voluntarily returned to and entered the Douglas County Courthouse to conduct business, and that plaintiff continued to file lawsuits against governmental defendants after March of 2005.[7] Defendants further assert that the true reason plaintiff did not pursue any tax appeals after March of 2005 was because plaintiff transferred all his ownership in his home to another individual in February of 2006 and thereafter lacked standing to appeal.

Defendants cannot escape liability for a First Amendment violation merely because an unusually determined plaintiff, such as Mr. Van Deelen, persists in his protected activity. The focus is on whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled.

> Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, we conclude that the proper inquiry asks "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." (Citations omitted.)

*Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir.2001), *cert. denied*, 537 U.S. 823 (2002).

As the Tenth Circuit has already found in this case, plaintiff's assertions of physical and verbal intimidation, if deemed credible by a jury, "surely suffice ... to

---

[7]*See e.g., Van Deelen v. City of Kansas City, Mo., 2007 WL 3101816* (8th Cir. 2007); *Van Deelen v. Judge Gary A. Fehner*, No. 4:06-00162 (W.D. Mo.  2006).

chill a person of ordinary firmness from continuing to seek redress for (allegedly) unfair property tax assessments." *Van Deelen v. Johnson,* 497 F.3d at 1157. This court is not at liberty to reexamine that finding.

The extent of plaintiff's actual injury, if any, remains a question of fact for the jury, which is free to credit plaintiff's assertion that he was deterred from filing future tax appeals by defendants' conduct, or to credit defendants' assertion that plaintiff did not pursue any further tax appeals was because plaintiff transferred all his ownership in his home to another individual in February of 2006 and thereafter lacked standing to appeal.  Plaintiff's claim that defendants retaliated against him for his prior lawsuit against Johnson, Miles and the County, thus survives summary judgment.

The court reaches a different result as to plaintiff's claim that defendants retaliated against him for his exercise and attempted exercise of his First Amendment freedoms of free speech, assembly, and association. Plaintiff has failed to raise a material question of fact that he was engaged in those underlying constitutionally protected activities, or any of them, as discussed above, and thus cannot establish the first element of the *Worrell* test, warranting summary judgment on this retaliation claim. (Theory 2 of pretrial order)

**Qualified Immunity**

**Qualified immunity**

Defendants' continue to assert that they are entitled to qualified immunity on all First Amendment issues. Although this court was previously persuaded by defendant's contention that the law is not clearly established in this area, the Tenth Circuit has resoundingly found to the contrary and this court is not at liberty to reexamine that issue. Although the Tenth Circuit invited this court to reexamine the issue of qualified immunity as to plaintiff's other §1983 claims, the discussion above concludes that the only remaining federal claims are those related to plaintiff's right to petition. This court is bound by the Tenth Circuit's finding that qualified immunity is not appropriate on the petition claim. *See Van Deelen*, 497 F.3d at 1158.

**State law claims**

Plaintiff asserts five state law claims against defendants in the pretrial order. Given the Tenth Circuit's finding that at least one federal claim survives summary judgment, this court has supplemental jurisdiction over and shall examine the merits of plaintiff's state law claims.

Defendants now concede that genuine issues of fact preclude summary judgment on two state law claims: assault by defendant Flory, and battery by defendant Flory. Dk. 84, p. 13. Defendants seek summary judgment on the

17

remaining three claims: 1) against Miles, Johnson, Fangohr and Flory for civil

conspiracy to assault and batter the plaintiff; 2) against  McGovern for negligent

supervision of Fanghor and Flory; and 3) against Fangohr for negligent supervision

of Flory. Defendants contend that the civil conspiracy claim fails for essentially the

same reasons as did the federal civil conspiracy claim, and that the claims of

negligent supervision fail for lack of an essential element.

**Civil conspiracy**

Plaintiff contends that defendants Miles, Johnson, Fangohr and Flory

conspired to assault and batter him. This state law claim is stated separately from

plaintiff's claim that the same defendants conspired to assault and batter him in

violation of §1983, which claim the Tenth Circuit found to be "without merit." *Van*

*Deelen*, 497 F.3d at 1159.

Kansas recognizes civil conspiracy as an actionable tort. *See Citizens State*

*Bank, Moundridge, v. Gilmore*, 226 Kan. 662, 603 P.2d 605 (1979). Its elements

include: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting

of the minds in the object or course of action; (4) one or more unlawful overt acts;

and (5) damages as the proximate result thereof." 226 Kan. at 662, 603 P.2d 605.

Syl. ¶ 7. Although conspiracy is not actionable without commission of some wrong

giving rise to a cause of action independent of the conspiracy, *Stoldt v. City of*

*Toronto*  234 Kan. 957, 967, 678 P.2d 153, 161 (1984), defendants have conceded

for purposes of this motion the alleged tort of assault and battery.

Defendants claim, however, that the evidence is insufficient to establish the

elements of a conspiracy, contending that plaintiff's sole evidence is Flory's

statement. In response, plaintiff relies upon factual allegations included in his First

Amended Petition. In so doing, plaintiff demonstrates that he does not understand

the full effect of the pretrial order, which supersedes all other pleadings and

governs the parties' claims and defenses.  *See Youren v. Tintic School Dist*., 343

F.3d 1296, 1304 (10th Cir.2003).

The court agrees that the sole evidence of any agreement in the present case

flows from plaintiff's affidavit in which plaintiff alleges Deputy Flory told him:

> Don't come back.  Johnson and Miles are mad because you sued them.  They
> told me to do whatever necessary to put a scare into you.  If you show up for
> another tax appeal hearing, I might have to shoot you.

Dk. 66. p. 4, para. 12. Taking into consideration that "inferences arising from the

record before us must be drawn and indulged in favor of the party opposing

summary judgment," the court finds that plaintiff could prevail in showing an

agreement and concerted action by defendants Miles, Johnson, Fangohr and Flory

to assault and batter plaintiff, if the jury credits his statement.[8]

---

[8] The Tenth Circuit did not share this court's concern with the potential hearsay nature of
Flory's statement. The parties will, of course, be able to present any such objections, at trial.

19

Defendants do not further analyze this claim, choosing only to assert that the "analysis of plaintiff's state law claim is the same as his federal conspiracy claim." Dk. 84, p. 14.  The court disagrees, having granted summary judgment on plaintiff's federal claim for conspiracy to assault and batter him primarily because "Section 1983 does not provide a basis for redressing violations of state law." *Van Deelen*, 2006 WL 1764381, *11 (D. Kan. 2006). Accordingly, summary judgment is not warranted on plaintiff's claim of conspiracy to assault and batter (paragraph 12 of the pretrial order).

### Negligent supervision

Defendants seek summary judgment on plaintiff's assertion of negligent supervision claims against Sheriff McGovern and Deputy Fangohr.  Plaintiff alleges that McGovern failed to properly supervise Fangohr and Flory, and that Fangohr failed to properly supervise Flory.

"Kansas law recognizes a claim by non-employee third parties for negligent supervision and retention." *Nwakpuda v. Falley's, Inc.*, 14 F. Supp. 2d 1213, 1217 (D. Kan. 1998) (Grocery store sued because its manager had detained the plaintiff customer as a possible suspect in a prior store robbery). *See also Beam v. Concord Hospitality, Inc.*, 873 F. Supp. 491, 503 (D. Kan. 1994); *Kansas State Bank & Trust Co. v. Specialized Transp. Serv., Inc.*, 249 Kan. 348, 362, 819 P.2d 587, 598

(1991). The Kansas Supreme Court recently clarified that "negligent supervision is a separate and distinct theory in addition to theories of negligent hiring and retention. (Citations omitted)." *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 331, 961 P.2d 1213 (1998).

To prevail on his claim of negligent supervision, plaintiff must prove: (1) the named defendant owed him a legal duty to supervise the named employee(s); (2) the named defendant breached that duty; and (3) that breach proximately caused his injuries. To establish that defendant's actions were the proximate cause of his injuries, plaintiff must show that defendant's actions in supervising Fanghor and/or Flory were the cause-in-fact of plaintiff's injuries and that the assault or battery and resulting injuries were a foreseeable consequence of defendant's supervision of these individuals.

Liability for negligent supervision is not based upon the theory of respondeat superior, but is direct, arising from the employer's notice that a risk of harm to others would exist as a result of the employment of the alleged tortfeasor.

> When a third party asserts a negligent retention and supervision claim against an employer, liability results not because of the employer-employee relationship, but because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor. The employer is subject to liability only for such harm as is within that risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee that the employer had reason to believe would be

likely to cause harm. However, it is not necessary that the precise nature of the injury alleged by the third-party plaintiff would have been foreseen by the employer ...

Whether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact. Only when reasonable persons could arrive at but one conclusion may the court determine the question as a matter of law.

*Kansas State Bank*, 249 Kan. at 362.

An employer need not have actual knowledge of the employee's dangerousness or unfitness to be held liable for negligent supervision. Instead, liability can be established by reasonable inferences flowing from evidence that the employer knew or should have known of the employee's incompetence or unfitness. *See Prugue v. Monley*, 29 Kan. App. 2d 635, 639-40 (2001) (affirming summary judgment where defendant had "no reason to believe [employee] was unfit.") However, "an incident not reasonably foreseeable by the exercise of reasonable care and prudence is not sufficient grounds for a negligence action. (Citations omitted.)" *Beshears By and Through Reiman v. Unified School Dist. No. 305,* 261 Kan. 555, 564 (Kan.1997) (affirming summary judgment based on finding that school district had no duty to protect one student from after-hours fight off premises with another student, where fight was not reasonably foreseeable).

Here, the facts of record, viewed in a light most favorable to plaintiff, do not show that either McGovern or Fangohr may have known or should have known of any impending danger posed by Fangohr or Flory, or show any circumstances

causing a careful and prudent person to be put on notice of any potential danger. No prior similar acts have shown  defendant Fangohr or Flory to be careless, reckless, dangerous or incompetent, which could furnish actual or constructive notice to the named defendants. Cf, *Nero v. Kansas State University*, 253 Kan. 567, 584(1993). No reason for McGovern or Fangohr to anticipate any assault or battery by Flory has been shown. "When there was no evidence of a risk of harm presented, the question of foreseeability of the harm is a matter of law." *Beshears By and Through Reiman v. Unified School Dist. No. 305,* 261 Kan. 555, 566 (1997). Plaintiff fails to raise a material question of fact that either McGovern or Fangohr failed to take the care which a reasonable and prudent man would have taken in supervising their subordinates for the work at hand. Accordingly, summary judgment is warranted on plaintiff's claims of negligent supervision (Paragraphs 15 and 16 of pretrial order).

In summary, the following federal claims remain for trial: retaliation for plaintiff's prior lawsuit (paragraph 1 of pretrial order) and violation of plaintiff's right to petition by infringing his right to pursue tax valuation appeals (paragraph 17). The following state law claims remain for trial: civil conspiracy to assault and batter plaintiff (paragraph 12), assault (paragraph 13), and battery (paragraph 14).

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Dks. 62, 84) is granted in part and denied in part in accordance with the terms of this memorandum and order.

IT IS ALSO ORDERED that defendants' motion for order to substitute documents (Dk. 87) is granted.

Dated this 14th day of February, 2008, Topeka, Kansas.

s/Sam A. Crow_____
U.S. District Senior Judge